UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NANCY RODRIGUEZ WALKER,

        Plaintiff,

  -against-            5:15-cv-0047 (LEK/DJS)

HON. JAMES C. TORMEY, *et al.*,

        Defendants.

## MEMORANDUM-DECISION and ORDER

**I. INTRODUCTION**

On January 15, 2015, Plaintiff Nancy Rodriguez Walker ("Plaintiff") commenced this action under 42 U.S.C.§ 1983, asserting claims for deprivation of due process on account of restrictions on her employment as a Spanish-language court interpreter. Dkt. No. 1 ("Complaint"). Presently before the Court are Motions to dismiss filed by Defendants Michael A. Klein ("Klein"), William J. Fitzpatrick ("Fitzpatrick"), and the Honorable James C. Tormey ("Judge Tormey") (collectively, "Defendants"). Dkt. Nos. 29 ("Klein Motion"); 29-1 ("Klein Memorandum"); 30 ("Fitzpatrick Motion"); 30-2 ("Fitzpatrick Memorandum"); 33 ("Tormey Motion"); 33-2 ("Tormey Memorandum"). For the following reasons, Judge Tormey and Klein's Motions to dismiss are granted, and Fitzpatrick's Motion to dismiss is granted in part and denied in part.

**II. BACKGROUND**[1]

  **A. Employment History**

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. See Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (noting that, in addressing a motion to dismiss pursuant to 12(b)(6), "[a] court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff").

Plaintiff is a Spanish-language court interpreter and for over twenty-one years has translated for the Fifth Judicial District of the State of New York Court System, the Office of the Onondaga County District Attorney ("OOCDA"), as well as state and federal agencies. Compl. ¶¶ 5, 25. In order to interpret for the New York State Court System, individuals are required to be listed on the Per Diem Court Interpreter Registry (the "Registry"). Id. ¶ 26. In order to be listed on the Registry, an individual must be certified by the Office of Court Administration ("OCA"). Id. ¶ 29. Certification requires fingerprinting, a criminal background check, and written and oral language proficiency exams. Id. Plaintiff received her court interpreter certification in 1993. Id. ¶ 30. Prior to the events alleged in the Complaint, Plaintiff translated four to five days per week in Fifth Judicial District courts. Id. ¶ 40. Plaintiff consistently received positive evaluations for her work as an interpreter. Id. ¶¶ 32, 36.

**B. Indictment and Acquittal**

On or around October 25, 2012, Plaintiff was summoned to OOCDA, where she translated a letter containing allegations of illegal activity by a local Spanish speaking attorney. Compl. ¶¶ 45-46. On November 2, 2012, Plaintiff was asked to return to OOCDA to assist in an investigation on the letter she translated. Id. ¶ 46. Plaintiff was then interrogated for approximately six hours regarding her relationship with the Spanish-speaking attorney, who Plaintiff had dealt with frequently in her work. Id. ¶ 50. The investigators' line of questions concerned whether Plaintiff had divulged information to the attorney concerning his indictment. Id. ¶ 51.

The investigators left the room and Fitzpatrick, the District Attorney for Onondaga County, entered and proceeded to interrogate Plaintiff for approximately thirty minutes. Id. ¶¶ 12, 56-57. Fitzpatrick stated that Plaintiff had "endangered a person's life." Id. ¶ 58. He further stated that "if

2

I walk out of this room everything in your life is done. You're going to be a felon and I'm going to do the very best I can to see that you go to prison." Id. ¶ 59.

At the conclusion of the interrogation, Plaintiff was arrested. Id. ¶ 61. The following day, November 3, 2012, Plaintiff was arraigned on charges of unlawful grand jury disclosure. Id. ¶ 62. As a result of Plaintiff's arrest and arraignment, Plaintiff was removed from the Registry in November 2012. Id. ¶ 64. Plaintiff also ceased to receive any assignments from federal and state agencies. Id. ¶ 65.

On February 2, 2013, Plaintiff was indicted by a grand jury on four counts of perjury in the first degree and two counts of unlawful grand jury disclosure. Id. ¶ 67. On August 19, 2013, Plaintiff was tried for the two felony counts of unlawful grand jury disclosure. Id. ¶ 69. On August 29, 2013, Plaintiff was acquitted and found not guilty of all charges of unlawful grand jury disclosure. Id. ¶ 70.

### C. Events Following Acquittal

Plaintiff was not automatically reinstated to the Registry following her acquittal. Compl. ¶ 77. Instead, on September 19, 2013, Plaintiff was contacted by the New York State Inspector General's Office to schedule an interview concerning her arrest. Id. ¶ 72. On April 3, 2014, Plaintiff was interviewed by telephone regarding her relationship with the indicted attorney and whether she had disclosed that relationship. Id. ¶ 76. In or around April or May 2014, the Inspector General's Office contacted Plaintiff's counsel and advised him that the investigation was completed and that the results had been forwarded to OCA for review. Id. ¶ 78. Plaintiff was not provided with the results of the investigation. Id. ¶ 79. At all times throughout the investigation, Plaintiff sought reinstatement to the Registry. Id. ¶¶ 74, 77. Plaintiff believes the investigation was initiated

3

at Judge Tormey and/or Fitzpatrick's request.  Id. ¶ 73.

Upon completion of the investigation, Plaintiff's counsel contacted the OCA regarding her status.  Id. ¶ 81.  On June 24, 2014, Plaintiff received a letter from the OCA, which stated that "[a]fter a review of the findings made by the Office of the Inspector General, and in collaboration with the Fifth Judicial District Office, your name and contact information will again be listed in the Registry and accessible by the NYS courts within the Fifth Judicial District, effective immediately."  Id. ¶ 83.  However, Plaintiff was subsequently informed that she was not listed on the Registry.  Id. ¶ 91.  In mid-July, Plaintiff's counsel again contacted the OCA and obtained confirmation that Plaintiff was to be reinstated to the Registry without any restriction as to the category of cases to which she might be assigned.  Id. ¶ 95.

Plaintiff believes that on or about July 1, 2014, Judge Tormey emailed Fifth District judges, judicial clerks, criminal court clerks, and court employees instructing them not to assign Plaintiff to their cases.  Id. ¶ 93.  Subsequently, Judge Tormey and Klein made an administrative decision that Plaintiff would not be assigned to criminal cases and proceedings in the Fifth Judicial District.  Id. ¶ 97.  In a July 2014 telephone conversation, Klein told Plaintiff's counsel that Judge Tormey and Klein had jointly made a decision to restrict Plaintiff from criminal assignments in the Fifth Judicial District.  Id. ¶ 100.  Plaintiff became further aware of the restriction on her assignments in an email from New York Supreme Court Judge John Brunetti, stating that "I would be happy to consider you for an appointment, pursuant to Court Rule 217.1(a), as a Spanish interpreter for criminal cases if you are on the OCA certified list without restrictions.  However there is a possibility that you may encounter difficulty in receiving payment."  Id. ¶ 101.

On August 8, 2014, Plaintiff received a letter from Klein regarding the restriction on her

4

assignments. Id. ¶ 103. The letter stated:

> This letter, which this office deems confidential, confirms and finalizes the determination of the Hon. James C. Tormey, Administrative Judge of the Fifth Judicial District, pertaining to the status of Nancy Rodriguez Walker as a Spanish Language Per Diem Court Interpreter. Judge Tormey has determined that while Ms. Walker remains on the approved list for all Fifth Judicial District courts outside Onondaga County and courts determining civil cases within Onondaga County, she will not be assigned criminal cases within Onondaga County. Judge Tormey has requested administrators to facilitate Ms. Walker's receiving an equitable share of a full range of cases for which she remains eligible, so as not to result in an undue reduction of the work assigned to her. At the same time, no specific amount of work can be assured, particularly after an increase of Spanish Language Court Interpreters has taken place – creating an expectation that some general workload reductions per interpreter could result. . . . The reasons for the restriction on criminal matters within Onondaga County are essentially three-fold. First, the Unified Court System Inspector General has found that Ms. Walker failed to adhere to professional standards through her association with a member of the criminal defense bar in Onondaga County. Second, work by Ms. Walker on criminal matters within Onondaga County would create at the very least an appearance of impropriety given her history of adverseness with the District Attorney of that County as well as a continuing lack of confidence in her for Onondaga County criminal cases. Third, the potential negative effect of the foregoing determination on Ms. Walker is expected to be ameliorated through the steps set out previously in this letter.

Id. ¶¶ 104-05. The letter further advised Plaintiff that "review of the foregoing determination by Deputy Chief Administrative Judge Michael Coccoma is available through written submissions should she elect to request such a review." Id. ¶ 108. However, the letter also indicated that the "additional review is not required and does not modify the complete discretion possessed by Court Administration to regulate and assign Per Diem foreign language court interpreters." Id. Plaintiff did not seek administrative review because she believed it would be futile. Id. ¶ 109.

Due to the restriction on her assignments, Plaintiff has experienced a significant diminution in her work. Id. ¶ 112. Previously, around ninety-five percent of Plaintiff's assignments were on criminal cases in the Fifth Judicial District. Id. ¶ 111. Now, Plaintiff is primarily assigned to

5

misdemeanor criminal matters in Oneida County and family court matters and only works one or two half-days per week. Id. ¶¶ 112-13. Additionally, Plaintiff is forced to commute two hours in each direction to Utica, New York to translate in the courts there. Id. ¶ 114.

   **D. Complaint**

Plaintiff's Complaint asserts the following causes of action: (1) deprivation of a property interest in violation of Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments against Fitzpatrick; (2) deprivation of a property interest in violation of Plaintiff's procedural due process rights against Judge Tormey and Klein; (3) conspiracy to violate Plaintiff's Fifth and Fourteenth Amendment rights against all Defendants pursuant to 42 U.S.C. § 1983; (4) deprivation of liberty, stigma plus, in violation Plaintiff's procedural due process rights against Fitzpatrick; and (5) deprivation of liberty, stigma plus, in violation of Plaintiff's procedural due process rights against Judge Tormey and Klein. See Compl. Plaintiff requests lost wages and non-economic damages as well as an injunction preventing Defendants from further restricting Plaintiff from receiving criminal assignments in the Fifth Judicial District. See id.

## III.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV. DISCUSSION

Defendants' Motions to dismiss assert that Plaintiff has failed to state procedural due process or conspiracy claims. Klein Mem. at 4-8, 12; Fitzpatrick Mem. at 5-11; Tormey Mem. at 5-12. Defendants Judge Tormey and Klein further assert that Plaintiff has failed to state a stigma-plus due process claim. Klein Mem. at 6-7; Tormey Mem. at 13-14. Defendants Judge Tormey and Klein additionally contend that they are entitled to judicial immunity, or, alternatively, qualified immunity. Klein Mem. at 8-12; Tormey Mem. at 14-17. Defendant Fitzpatrick argues that he is entitled to prosecutorial immunity. Fitzpatrick Mem. at 11-13.

### A. Procedural Due Process

The Fourteenth Amendment requires that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The analysis of a procedural due process claim proceeds in two steps: (1) the court first determines whether there is a property interest of which an individual has been deprived; and (2) if so, the court determines "whether the procedures followed by the State were constitutionally sufficient." Oneida Indian Nation v. Madison County, 665 F.3d 408, 428 (2d Cir. 2011).

#### 1. Property Interest

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings

that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." Id.

To the extent Plaintiff may be understood to assert a property interest in criminal court interpreter assignments in Onondaga County, she fails to state a constitutionally protected interest. Generally, an employee does not have a property interest in a particular work assignment. Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 783 (2d Cir. 1991); see also Mudge v. Zugalia, No. 13-cv-891, 2014 WL 2453353, at *4 (N.D.N.Y. June 2, 2014) ("[P]laintiff does not enjoy a protected property interest in any particular untenured, per diem substitute teacher position."); Kane v. Krebser, 44 F. Supp. 2d 542, 549-50 (S.D.N.Y. 1999) (listing cases holding that denial of a particular work assignment is not entitled to protections of due process clause).

Plaintiff instead argues that she has a property interest in her certification as a Spanish language interpreter. Dkt. No. 38 ("Response") at 9.[2] Plaintiff likens her certification to a teaching license. Id. at 10-11. Courts have recognized that an individual may claim a property interest in the opportunity to seek employment pursuant to a teaching license. Lombard v. Bd. of Educ. of City of New York, 645 F. Supp. 1574, 1577 (E.D.N.Y. 1986); see also Mudge, 2014 WL 2453353, at *5 ("[P]laintiff's protected property interest lies in his opportunity to seek employment pursuant to his state-issued teaching license."). As stated in Lombard, a teaching license creates a "legitimate claim of entitlement" as to the opportunity to seek employment in all school districts. Lombard, 645 F. Supp. 2d at 1579. Accordingly, the teaching license cannot be withdrawn without due process. Id.

---

[2] Plaintiff's Response Memorandum is filed at docket numbers 38 and 38-1.

8

The Court agrees that the court interpreter certification, like a teaching license, creates a legitimate claim of entitlement. See Stein v. Bd. of City of New York, Bureau of Pupil Transp., 792 F.2d 13, 17 (2d Cir. 1986). Certification requires certain qualifications and is necessary to serve as a court interpreter in the New York State Court System. Compl. ¶¶ 26, 29. Plaintiff therefore has stated a property interest in her court interpreter certification.

However, while Plaintiff can assert a property interest in her certification, she cannot establish that she was deprived of her certification. Plaintiff, relying on Mudge, argues that the restriction barring Plaintiff from working on criminal cases has functionally revoked her certification. Resp. at 12-13. The Court is not persuaded by Plaintiff's arguments and instead finds that Mudge establishes that Plaintiff has not been deprived of the use of her certification.

In Mudge, the plaintiff's teaching license was suspended for one year. Mudge, 2014 WL 24553353, at *1. After his license was reinstated, the plaintiff applied to teaching positions in various school districts. Id. The plaintiff alleged that members of the New York State Department of Education ("NYDOE") interfered with his attempts to secure a new job by contacting school districts he applied to and advising them not to hire him. Id. While the plaintiff obtained substitute teaching positions at two school districts, he was terminated from those positions when NYDOE contacted the school districts. Id. at *1-2. The plaintiff asserted procedural due process claims against NYDOE and the two school districts. Id. at *1.

As in the present case, the court found that the plaintiff asserted a property interest in his teaching license. Id. at *4. The court found that the plaintiff stated a procedural due process claim against the NYDOE defendants because "their action . . . resulted in the functional equivalent of a revocation" of his license. Id. at *5. "[A]ctions by [NYDOE] employees to prevent an individual

9

from working in its schools are tantamount to denying him the benefit of that license without any procedural due process." Id. However, the plaintiff could not state a claim against the individual school districts because "the alleged conduct of the individual school districts . . . impacts only plaintiff's per diem substitute teacher positions in those respective districts, it does not effectively deny him the opportunity to use his teaching license elsewhere in the state." Id.

Plaintiff's allegations against Defendants are similar to the Mudge plaintiff's claims against the individual school districts, not to the claims against the NYDOE. Plaintiff's certification enables her to work throughout the New York State Court System. Compl. ¶ 26. Defendants' restriction on Plaintiff, however, only affects her assignments in the Fifth Judicial District. Id. ¶ 104. The restriction does not deny Plaintiff the opportunity to be assigned to cases in any of the other counties in the State. See id. ¶ 114. Therefore, Plaintiff cannot claim that the restriction deprives her of the benefits of her court interpreter certification. Plaintiff can only claim that Defendants' restriction deprives her of particular assignments in the Fifth Judicial District; however, as Plaintiff recognizes, that is insufficient to state a deprivation of a protected property interest.

Plaintiff also alleges a deprivation of certification based on her removal from and delay in reinstatement to the Registry. See Compl. ¶¶ 121, 136. Insofar as Plaintiff alleges a claim against Judge Tormey and Klein based on the delay in reinstatement to the Registry, she fails to include any allegations that those individuals were personally involved in delaying her reinstatement. Furthermore, insofar as Plaintiff claims a deprivation of due process based on her removal from the Registry due to her prosecution by Fitzpatrick, that claim is barred by prosecutorial immunity.[3] Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995) ("[P]rosecutors are absolutely

---

[3] Fitzpatrick's prosecutorial immunity is discussed further below. See IV.B.2.

10

immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case.").

Plaintiff alternatively argues that she has a protected property interest in her continued employment as an interpreter. Resp. at 11. However, "[e]mployees at will have no protectable property interest in their continued employment." Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002). Plaintiff's work was by assignment. Compl. ¶¶ 27, 38. Furthermore, Plaintiff's employment has not been terminated and she continues to work in courts outside of Onondaga County. See Stein, 792 F.2d at 17 (citing Morales v. Bd. of Educ., 479 N.Y.S.2d 330 (N.Y. Sup. Ct. 1984) (finding no deprivation of property where employee was not discharged)).[4]

**B. Stigma-Plus Due Process Claim**

It is well settled that "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause to create a cause of action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). However, "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause is that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. "Such an action is referred to as a stigma-plus claim; it involves 'an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'" Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (quoting DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003)). In order to state a stigma-plus claim, a plaintiff must

---

[4] Because the Court finds that Plaintiff has failed to state that she was deprived of a protected property interest, it need not address Defendants' arguments that adequate post-deprivation remedies were available to Plaintiff.

11

establish three elements. First, the plaintiff must show that the government made stigmatizing statements about him—statements that call into question plaintiff's 'good name, reputation, honor, or integrity.'" Patterson, 370 F.3d at 330 (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" may also satisfy that requirement. Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996). Second, the plaintiff must establish that the stigmatizing statements were made public. Patterson, 370 F.3d at 330. Finally, the plaintiff must prove that "the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment." Id.

### 1. *Judge Tormey and Klein*

Plaintiff alleges that the July 1, 2014 email from Judge Tormey and August 8, 2014 letter from Klein, on behalf of Judge Tormey, constitute stigmatizing statements, unsupported by any evidence, that injured Plaintiff's reputation. Compl. ¶¶ 181, 185. In an email sent on July 1, 2014, to Fifth Judicial District judges, judicial clerks, criminal court clerks, and court employees, Judge Tormey announced an administrative decision that Plaintiff was not to be assigned to cases or proceedings. Id. ¶ 181. In the August 8, 2014 letter, explaining the administrative decision, Klein, on behalf of Judge Tormey, referred to Plaintiff's "fail[ure] to adhere to professional standards," "history of adverseness with the District Attorney," and the Fifth Judicial District's "continuing lack of confidence in her." Id. ¶ 107.

Here, Plaintiff fails to state a stigma-plus claim because she has not shown that the allegedly

12

stigmatizing statements were "coupled with the loss of government employment or deprivation of a legal right or status, such as a loss of job opportunities." Abramson, 278 F.3d at 103. As discussed above in connection with Plaintiff's procedural due process claim, the restriction on Plaintiff's assignments has not impeded Plaintiff's ability to seek court interpreter assignments in other counties. The restriction has not prevented Plaintiff "from practicing [her] profession." Rudow v. City of New York, 822 F.2d 324, 330 (2d Cir. 1987); see also Baden v. Koch, 799 F.2d 825, 830-31 (2d Cir. 1986). Rather, it merely limits her ability to take assignments in the Fifth Judicial District. Plaintiff therefore fails to state an injury sufficient to satisfy the "plus" factor.

Furthermore, even assuming Plaintiff had stated a sufficient injury, the statements Plaintiff relies on fail to establish the requisite reputational injury. The July 1, 2014 email states:

> Please be advised that per diem Court Interpreter Nancy Rodriguez-Walker has been reinstated to the E-Scheduling System. After consulting with the Administrative Judge, I am advising you that Ms. Walker may be used only in civil matters in your courts. Please notify the appropriate personnel. If you have any questions, please contact me.

Dkt. No. 41-1 ("Tormey Affidavit"), Ex. A.[5] The email does not injure Plaintiff's reputation; rather, it merely expresses an administrative decision that Plaintiff's assignments would be restricted to certain cases. As to the August 8, 2014 letter, Plaintiff fails to plead that it was made public. Indeed, the letter stated that it was deemed "confidential." Compl. ¶ 104. Therefore, the email and letter are both insufficient to support Plaintiff's stigma-plus claim against Judge Tormey and Klein.

Plaintiff, in her Response, suggests that Defendants must have made other stigmatizing statements about Plaintiff in order to make the restriction on Plaintiff's assignments publicly known.

---

[5] Judge Tormey attached the July 1, 2014 email to his Reply. See Tormey Aff. On a motion to dismiss, a court may consider documents that are incorporated by reference into the complaint. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Because the July 1, 2014 email is referenced in the Complaint, the Court may consider it on Defendants' Motions to dismiss.

13

However, the July 1, 2014 email made the restriction publicly known.

Accordingly, Plaintiff's stigma-plus claim against Judge Tormey and Klein is dismissed.

### 2. *Fitzpatrick*

Plaintiff alleges that Fitzpatrick made false statements during her interrogation that injured her reputation. Compl. ¶¶ 165-67. Specifically, Fitzpatrick stated that she "endangered a person's life" and "[y]ou're going to be a felon and I'm going to do the very best I can to see that you go to prison." Id. ¶ 163. Plaintiff further alleges that Fitzpatrick made statements to Judge Tormey and Klein indicating that Plaintiff has a "history of adverseness with the District Attorney" of Onondaga County. Id. ¶ 171.

Fitzpatrick argues that Plaintiff's claims are barred by prosecutorial immunity. Fitzpatrick Mem. at 11-13. Prosecutors are entitled to absolute immunity "when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). Prosecutorial immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original). However, prosecutors are not immune for "acts of investigation or administration." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). Investigative or administrative activities are only entitled to qualified immunity. Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981). In order to determine whether conduct is entitled to absolute immunity or only qualified immunity, a court must undertake "[a]n examination of the functional nature of the prosecutorial behavior." Id. "An official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of immunity for the function

14

in question." Hill, 45 F.3d at 660.

The present issue is whether Fitzpatrick's interrogation of Plaintiff preceding her arrest is an investigative activity. "The Supreme Court has 'identified evaluating evidence and interviewing witnesses' as falling on the absolute immunity side . . . leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side.'" Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012) (quoting Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998)). "Investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution . . . are shielded by absolute immunity when done by prosecutors." Id.

While "district courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage," Deronette v. City of New York, No. 05 CV 5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007), the Second Circuit has held that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss," Varricchio v. County of Nassau, 702 F. Supp. 2d 40, 65 (E.D.N.Y. 2010) (quoting Hill, 45 F.3d at 663). Because the Court cannot determine based on Plaintiff's Complaint whether Fitzpatrick's conduct in Plaintiff's interrogation was in his role as an advocate, it will not determine as a matter of law that Fitzpatrick is entitled to absolute immunity.

Fitzpatrick does not otherwise challenge the sufficiency of Plaintiff's stigma-plus claim against him. See Fitzpatrick Mem. Accordingly, Fitzpatrick's Motion to dismiss is denied insofar

as it seeks to dismiss Plaintiff's stigma-plus claim.[6]

**C. Conspiracy Claim**

In order to establish a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Id. at 325 (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff alleges that "Defendants, through agreement and various overt acts, conspired to deprive Plaintiff of the benefit of her certification and placement on Per Diem Court Interpreter Registry by prosecuting her without basis; disregarding her acquittal; delaying in reinstating her to the Per Diem Court Interpreter Registry; directing judges, judicial clerks, and/or court personnel not to assign her to criminal matters and/or proceedings; . . . banning her from working with OOCDA . . . complaining to, contacting, recommending, and/or suggesting that the Inspector General's office investigate Plaintiff following her August 29, 2013 acquittal . . . [and] falsifying these alleged findings as a basis to restrict Plaintiff from assignments in the criminal courts of Onondaga County." Compl. ¶¶ 151-53.

"Where . . . all substantive Section 1983 claims against named stated actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed."

---

[6] To the extent Plaintiff's stigma-plus claim against Fitzpatrick is based on the allegation that Fitzpatrick made statements to Judge Tormey and Klein, leading to the restriction on Plaintiff's assignments, her claim is subject to dismissal based for the same reasons as discussed above.

16

Caporicci v. Nassau Cty. Police Dep't, No. CV 05-5764, 2007 WL 764535, at *8 (E.D.N.Y. Mar. 6, 2007); see also Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (dismissing conspiracy claim where underlying § 1983 causes of action had been dismissed). A § 1983 "lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).

The Court has found above that Plaintiff has failed to state either a procedural due process or stigma-plus claim based on the restriction on her assignments. Accordingly, Plaintiff's conspiracy claim is also subject to dismissal to the extent that it is based on the restriction on her assignments. Plaintiff's conspiracy claim is further based on allegations that Defendants prosecuted her without basis, delayed in reinstating her to the Per Diem Registry, and recommended that the Inspector General investigate her. Compl. ¶¶ 151-52. These additional allegations also fail to establish a basis for Plaintiff's conspiracy claim. There is nothing in Plaintiff's Complaint to suggest that Judge Tormey or Klein were involved in the decision to prosecute Plaintiff, or that any Defendants were involved in the delay in Plaintiff's reinstatement to the Registry. Furthermore, Plaintiff does not offer any authority for how investigation by the Inspector General violated her constitutional rights.

V. **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant Michael A. Klein's Motion (Dkt. No. 29) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Defendant William J. Fitzpatrick's Motion (Dkt. No. 30) to dismiss is **GRANTED in part and DENIED in part** consistent with this Memorandum-Decision and Order;

and it is further

**ORDERED**, that Defendant James C. Tormey's Motion (Dkt. No. 33) to dismiss is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    March 31, 2016
          Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge