UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NANCY RODRIGUEZ WALKER,

                            Plaintiff,

          -against-                                        5:15-CV-47 (LEK/DJS)

JAMES C. TOMEY, *et al.*,

                            Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Plaintiff Nancy Rodriguez Walker commenced this civil rights action pursuant to

42 U.S.C. § 1983, asserting claims for deprivation of due process in connection with restrictions

on her employment as a Spanish-language court interpreter. Dkt. No. 1 ("Complaint"). Presently

before the Court are defendant William J. Fitzpatrick's motion for judgment on the pleadings,

Dkt. Nos. 66 ("Motion"), 66-1 ("Memorandum"), Walker's cross motion to amend the

Complaint, Dkt. Nos. 91 ("Cross Motion"), 91-2 ("PAC"), and Walker's motion for sanctions,

Dkt. Nos. 80 ("Sanctions Motion"); 80-1 ("Sanctions Memorandum"). For the reasons that

follow, Fitzpatrick's Motion and Walker's Sanctions Motion are denied, and Walker's Cross

Motion is granted.

## II.    BACKGROUND

### A.  Factual Background

        The facts underlying this action were detailed in the Court's March 31, 2016

Memorandum-Decision and Order, Dkt. No. 46 ("2016 Order"), and will be repeated here only

to the extent necessary to resolve the motions currently before the Court.[1] Because Fitzpatrick moves to dismiss for failure to state a claim, the allegations of the PAC are accepted as true and form the basis of this section. E.g., Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000).

Plaintiff is a Spanish-language court interpreter and for over twenty-one years has translated for the Fifth Judicial District of the State of New York Court System, the Onondaga County District Attorney's Office, as well as state and federal agencies. PAC ¶¶ 8, 17. In order to interpret for the Court System, individuals are required to be listed on the Per Diem Court Interpreter Registry. Id. ¶ 18. In order to be listed on the Registry, an individual must be certified by the Office of Court Administration ("OCA"). Id. ¶ 21. Certification requires fingerprinting, a criminal background check, and written and oral language proficiency exams. Id. Plaintiff received her court interpreter certification in 1993. Id. ¶ 22. Prior to the events alleged in the Complaint, Plaintiff translated four to five days per week in Fifth Judicial District courts. Id. ¶ 32. Plaintiff consistently received positive evaluations for her work as an interpreter. Id. ¶¶ 24, 28.

On or around October 25, 2012, Plaintiff was summoned to the District Attorney's office, where she translated a letter containing allegations of illegal activity by a local Spanish-speaking attorney. Id. ¶¶ 36–37. On November 2, 2012, Plaintiff returned to the District Attorney's office to assist in an investigation on the letter she translated. Id. ¶ 39. Plaintiff was then interrogated

---

[1] Walker filed her Cross Motion approximately two months after Fitzpatrick submitted his Motion. Cross Mot. Because Fitzpatrick opposes the Cross Motion on futility grounds, arguing that the PAC does not remedy the purported deficiencies of the Complaint, Dkt. No. 97-1 ("Fitzpatrick Opposition") at 1, the Court will consider his arguments in light of the PAC.

for approximately six hours regarding her relationship with the Spanish-speaking attorney, with whom Walker had dealt frequently in her work. Id. ¶¶ 40–41. The investigators questioned whether Walker had divulged information to the attorney concerning his indictment. Id. ¶ 42–43. Fitzpatrick, the Onondaga County District Attorney, then entered and interrogated Plaintiff for approximately thirty minutes. Id. ¶¶ 48–49. Fitzpatrick stated that Walker had "endangered a person's life." Id. ¶50. He further stated that "if I walk out of this room everything in your life is done. You're going to be a felon and I'm going to do the very best I can to see that you go to prison." Id. ¶ 51.

Following the interrogation, Walker was arrested. Id. ¶ 53. She was arraigned the next day on charges of unlawful grand jury disclosure. Id. ¶ 54. On November 5, 2012, Senior Assistant District Attorney Melinda McGunnigle[2] wrote a letter to the Honorable James C. Tormey, District Administrative Judge of the Fifth Judicial District, regarding Walker. Id. ¶ 56. McGunnigle's letter included the following statements: "Ms. Walker's conduct not only divulged confidential information, but may have put the lives of these witnesses in jeopardy," "Our office can no longer trust that Ms. Walker will keep . . . information confidential," and "we do not believe that it is appropriate for Ms. Walker to continue providing translation services to any court at this time." Id. As a result of these statements, Walker was removed from the Registry in November 2012. Id. ¶¶ 58–59. She also stopped receiving any assignments from federal and state agencies. Id. ¶ 61.

On August 19, 2013, Walker was tried for the two felony counts of unlawful grand jury disclosure. Id. ¶ 65. She was acquitted of all charges on August 29. Id. ¶ 66.

---

[2] The PAC adds McGunnigle as a defendant in this action. PAC ¶ 1.

Walker was not automatically reinstated to the Registry following her acquittal. On August 30, 2013, Sandra Bryan, the Coordinator of Court Interpreting Services, informed the New York State Inspector General's Office of Walker's acquittal. Id. ¶ 68. On September 18, Walker emailed court staff informing them that she was available to work as an interpreter and requesting to resume her duties. Id. ¶ 70. The next day, September 19, Bryan sent an email to court employees informing them that because "the requisite investigation regarding" Walker was "still open," she was "not eligible for any court interpreting assignments within the NYS Unified Court System at this time." Id. ¶ 71. The same day, the Inspector General's Office contacted Walker to schedule an interview concerning her 2012 arrest. Id. ¶ 72. On the advice of counsel, Walker declined the interview request. Id. ¶ 73.

On October 17, 2013, the Inspector General issued a memorandum to Eugene Myers, the Chief of Staff of the Administrative Judge, recommending that Walker "be permanently removed from the eligibility list of Court Interpreters." Id. ¶¶ 74, 77. In its memorandum, the Inspector General noted McGunnigle's request that Walker not be assigned to any cases involving Fitzpatrick's office. Id. ¶ 75. On October 25, Myers informed the Inspector General that "consistent with the recommendation of your office, we will arrange to have Ms. Rodriguez Walker permanently removed from the list." Id. ¶ 78. On November 4, Walker requested reinstatement in light of her August 29 acquittal. Id. ¶ 79.

On April 3, 2014, the Inspector General's Office interviewed Walker regarding her relationship with the indicted attorney and whether she had disclosed that relationship. Id. ¶ 81. On April 28, the Inspector General notified Myers that it had concluded its investigation of Walker's case and provided its report and recommendations. Id. ¶ 83. Walker was notified that

the investigation had been completed, but was not provided with the Inspector General's report. Id. ¶ 87.

On June 24, 2014, nearly ten months after her acquittal in August 2013, Walker received a letter informing her that she would be added to the Registry "effective immediately." Id. ¶ 91. However, she was not added to the Registry at that time. Id. ¶¶ 98–101. Several weeks later, OCA informed Walker's attorney that she "was to be reinstated" to the Registry "without any restriction as to the category of cases that might require the services of a Spanish language interpreter." Id. ¶ 106. In late July 2014, Walker learned that she was restricted from criminal assignments in the Fifth Judicial District. Id. ¶¶ 110–11.

On August 8, 2014, Walker received a letter from Michael Klein, District Executive of the Fifth Judicial District, regarding the restriction on her assignments. Id. ¶ 123. The letter cited Walker's "fail[ure] to adhere to professional standards," "history of adverseness with the District Attorney," and the "continuing lack of confidence in her" to justify the restriction. Id. ¶ 127. The letter further advised Walker that "review of the foregoing determination by Deputy Chief Administrative Judge Michael Coccoma is available through written submissions should she elect to request such a review." Id. ¶ 128. However, the letter also indicated that the "additional review is not required and does not modify the complete discretion possessed by Court Administration to regulate and assign Per Diem foreign language court interpreters." Id. Walker did not seek administrative review because she believed it would be futile. Id. ¶ 129.

**B. Procedural Background**

Walker commenced this action on January 15, 2015 against Fitzpatrick, Judge Tormey, and Klein, individually and in their official capacities. Compl. The Complaint asserted claims for

violations of procedural due process, "stigma-plus" due process violations, and conspiracy to violate her Fifth and Fourteenth Amendment rights. Id. ¶¶ 116–213. In May and June 2015, Defendants individually moved to dismiss the Complaint for failure to state a claim. Dkt. Nos. 29 ("Klein Motion"), 30, ("Fitzpatrick Motion"), 33 (Tormey Motion"). The Court dismissed all claims against Judge Tormey and Klein, as well as the procedural due process claim against Fitzpatrick. 2016 Order at 7–18. The Court also dismissed Walker's conspiracy claim to the extent it was based on restrictions placed on her assignments, her prosecution, delay in reinstating her to the Registry, and recommending that the Inspector General investigate her. Id. at 17.

The parties subsequently engaged in discovery, and, on March 28, 2017, Fitzpatrick again moved to dismiss the Complaint, this time under Rule 12(c) of the Federal Rules of Civil Procedure. Mot. Walker opposes the Motion, Dkt. No. 89 ("Opposition"). She has also moved for sanctions in response to Fitzpatrick's "delayed filing" of the Motion, Sanctions Mot. at 1,[3] and cross-moved to amend the Complaint, Cross Mot. Fitzpatrick opposes the Sanctions Motion, Dkt. No. 86-3 ("Sanctions Opposition"), and the Cross Motion, Dkt. No. 97 ("Cross Opposition").

The Court addresses each of the three motions below.

## III.    LEGAL STANDARD

The standard for a motion for judgment on the pleadings pursuant to Rule 12(c) "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v.

---

[3] Citations to this document refer to the page numbers generated by the Court's electronic filing system ("ECF").

Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp., Inc., 423

F.3d 107, 113 (2d Cir. 2005)). To avoid dismissal, a "complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

court must accept as true the factual allegations contained in a complaint and draw all inferences

in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006).

Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery

will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility

standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal,

556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces

does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a

court is unable to infer more than the possibility of misconduct based on the pleaded facts, the

pleader has not demonstrated that he is entitled to relief, and the action is subject to dismissal. Id.

at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings."

Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (second alteration

in original) (quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001)). Presented with

"two plausible inferences that may be drawn from factual allegations," a court "may not properly

dismiss a complaint that states a plausible version of the events merely because the court finds a

different version more plausible." Id.

## IV.    DISCUSSION

### A.  Judgment on the Pleadings

The Fourteenth Amendment's Due Process Clause prohibits a state actor from depriving

a citizen of her life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

It is well settled that "[a] person's interest in his or her good reputation alone, apart from a more

tangible interest, is not a liberty or property interest sufficient to invoke the procedural

protections of the Due Process Clause to create a cause of action under § 1983." Patterson v.

City of Utica, 370 F.3d 322, 329–30 (2d Cir. 2004) (citing Paul v. Davis, 424 U.S. 693, 701

(1976)). "Loss of one's reputation can, however, invoke the protections of the Due Process

Clause if that loss is coupled with the deprivation of a more tangible interest, such as

government employment." Id. at 330 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S.

564, 572–73 (1972)). Such an action is generally referred to as a "stigma-plus" claim, and

involves  "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible

interest' or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d

292, 302 (2d Cir. 2003) (citing Paul v. Davis, 424 U.S. 693, 701–02, 711–12 (1976)).

In order to state a stigma-plus claim, a plaintiff must establish three elements. First, he

must "show that the government made stigmatizing statements about him—statements that call

into question plaintiff's 'good name, reputation, honor, or integrity.'" Patterson, 370 F.3d at 330

(quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)).

Statements that "denigrate the employee's competence as a professional and impugn the

employee's professional reputation in such a fashion as to effectively put a significant roadblock

in that employee's continued ability to practice his or her profession" may also satisfy that

requirement. Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630–31 (2d Cir.

1996). Second, the plaintiff must establish that the stigmatizing statements were made public. Patterson, 370 F.3d at 330. Finally, the plaintiff must prove that "the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment." Id.

In his Motion, Fitzpatrick argues that Walker has failed to plead a stigma-plus claim because: (1) the Court previously held that Walker "has not suffered 'a loss of government employment or deprivation of a legal right or status, such as a loss of job opportunities,'" Mem. at 3 (quoting 2016 Order at 12–13), (2) Walker "cannot establish reputational injury" because the challenged statements were neither public nor knowingly false, id. at 4–5, and (3) Walker fails to adequately allege a connection between his statements and her removal, id. at 5. Next, Fitzpatrick argues that Walker's § 1983 official capacity claim must be dismissed because he is entitled to absolute immunity under the Eleventh Amendment. Id. at 6. In the alternative, he claims the § 1983 claim fails because Walker has not alleged the existence of a policy or practice. Id. at 6–7. Finally, Fitzpatrick argues that Walker's Fifth Amendment claim must be dismissed because the Fifth Amendment "does not regulate the activities of state officials or state actors" such as Fitzpatrick. Id. at 8.[4]

Fitzpatrick's argument that the "Court has already determined that Plaintiff has failed to establish a stigma-plus claim on the grounds that she has not suffered 'a loss of government employment or deprivation of a legal right or status, such as a loss of job opportunities,'" id. at 3 (quoting 2016 Order at 12–13), is unavailing. While Fitzpatrick accurately quotes the Court's discussion of the stigma-plus claim against Judge Tormey and Klein, that conclusion was based

_____

[4]  The PAC does not include a claim under the Fifth Amendment, and so the Court need not address this argument. Opp'n at 20.

on the allegations contained in the original Complaint, which only alleged a restriction on

Walker's employment within the Fifth Judicial District. 2016 Order at 12–13. The Court

concluded that the restriction had "not prevented Plaintiff 'from practicing [her] profession'"

because it did "not impede[] Plaintiff's ability to seek court interpreter assignments in other

counties." Id. at 13 (alteration in original) (quoting Rudow v. City of New York, 822 F.2d 324,

330 (2d Cir. 1987)). As Walker notes, Opp'n at 12, the PAC remedies this defect. The PAC

alleges that Walker was wholly deprived of her interest in her court interpreter certification when

she was removed from the Registry in November 2012. PAC ¶ 1–5, 137. As a result, she was

"completely unable to work as an interpreter in any state court from November 2012 through her

reinstatement on June 24, 2014, in connection with stigmatizing statements made by

Defendant[s]." Id. ¶ 1. Therefore, the PAC adequately alleges that Walker was prevented "from

practicing [her] profession" between November 2012 and June 2014, and thus states a

stigma-plus claim. Rudow, 822 F.2d at 330.

  Fitzpatrick also argues that Walker "cannot establish reputational injury" because the

challenged statements were not public and were not knowingly false. Mem. at 4–5. He cites no

case law to support his claim that the statements alleged here were insufficiently public to

support a stigma-plus claim. Among other things, Walker alleges that Fitzpatrick stated that she

endangered the lives of witnesses and that his office informed other officials that she could not

be trusted with confidential information. PAC ¶¶ 50–56. In light of the fact that discovery is

ongoing, depositions have not taken place, and the Second Circuit's holding that "the potential

for public disclosure is sufficient to meet the public disclosure requirement of a stigma-plus

claim," the Court concludes that Walker has adequately alleged public statements. Jenkins v.

New York City Dep't of Homeless Servs., 643 F. Supp. 2d 507, 513 (S.D.N.Y. 2009) (citing

Brandt v. Bd. of Co-op. Educ. Servs., 820 F.2d 41, 42–43 (2d Cir. 1987)), aff'd on other

grounds, 391 F. App'x 81 (2d Cir. 2010); see also Segal v. City of New York, 459 F.3d 207, 213

(2d Cir. 2006) (noting "that the placement of statements in an employee's personnel file may

satisfy the contemporaneous public disclosure elements of a stigma-plus claim" (citing Brandt,

820 F.2d at 45)). The Court also concludes that Walker adequately pleads falsity because she has

identified statements she alleges are "false and can be proven false." Mudge v. Zugalla,

No. 13-CV-891, 2014 WL 2453353, at *7 (N.D.N.Y. June 2, 2014). Fitzpatrick's contention that

the challenged statements were not untrue and that he "had no reason to believe they were false

statements," Mem. at 4, raises factual issues that should be resolved by a jury, not on a motion to

dismiss. At this stage, Walker need only plead falsity, not establish that the statements were in

fact untrue.

     Next, Fitzpatrick argues that Walker fails to adequately allege a connection between his

statements and her removal. Id. at 5. Walker alleges that she was removed from the Registry and

not restored following her acquittal at least in part because of Fitzpatrick's statements regarding

her trustworthiness. E.g., PAC ¶¶ 56–59. Fitzpatrick cites no cases to support his argument that

his November 2012 statements cannot plausibly be connected to Walker's November 2012

removal from the Registry. While he may be correct that her removal was based entirely on her

arrest, that does not explain why Walker was not reinstated for nearly ten months after her

acquittal. Because the Court is required to draw all factual inferences in Walker's favor on a

motion to dismiss, it concludes that she has adequately pleaded a causal connection between

Fitzgerald's statements and her removal. See Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005)

("There is no rigid requirement, therefore, that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time.").

Finally, Fitzpatrick argues that Walker's § 1983 official capacity claim must be dismissed because he is entitled to absolute immunity under the Eleventh Amendment. Mem. at 6. He cites Houghton v. Cardone, 295 F. Supp. 2d 268 (W.D.N.Y. 2003), to support this argument. There, the court held that a local district attorney was entitled to Eleventh Amendment immunity because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Id. at 275 (alteration in original) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)). However, as Walker notes, Opp'n at 17, "[w]ith respect . . . to claims centering not on decisions whether or not, and on what charges, to prosecute[,] but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned," Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993). Thus, when acting in an administrative capacity, district attorneys are not immune from § 1983 claims. Id.; see also Walker v. City of New York, 974 F.2d 293, 301 (2d Cir.1992) (concluding that a district attorney was not immune for actions taken as a municipal policy maker), cert. denied, 507 U.S. 961 (1993). As the Court previously held when Fitzgerald asserted prosecutorial immunity, "[b]ecause the Court cannot determine based on Plaintiff's Complaint whether Fitzpatrick's conduct in Plaintiff's interrogation was in his role as an advocate, it will not determine as a matter of law that Fitzpatrick is entitled to absolute immunity." 2016 Order at 15. Here too, whether Fitzgerald acted in his prosecutorial capacity when he made the challenged statements is a question of fact that cannot be resolved on a Rule 12(c) motion.

12

Therefore, the Court is unable to determine that he is entitled to Eleventh Amendment immunity at this time.

Because the Court concludes that Fitzpatrick is not immune under the Eleventh Amendment, it need not reach Walker's argument, Opp'n at 16, that Fitzpatrick waived his Eleventh Amendment defense by failing to raise it in his prior motion to dismiss, or at any other point since the 2016 Order. To the extent Fitzpatrick argues that Walker's § 1983 official capacity claim must be dismissed for failure to allege a policy or practice, Mem. at 6, his argument also fails. To state a claim against a government official in his official capacity, "a plaintiff is required to plead . . . three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Walker alleges the existence of a policy or practice sufficient to survive dismissal. E.g., PAC ¶ 75. Fitzpatrick's Motion is therefore denied.

**B. Cross Motion**

Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend her complaint more than twenty-one days after service of a motion to dismiss "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962); see also Dunn v. Albany

Med. Coll., No. 09-CV-1031, 2010 WL 2326127, at *8 (N.D.N.Y. June 7, 2010) (Kahn, J.)

("Leave to amend a complaint is not automatic, and a court may deny a motion to amend for

good cause 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of the allowance of the amendment, futility of amendment, etc.'" (quoting

Foman, 371 U.S. at 182)).

      Fitzpatrick argues that the Court should not allow Walker to amend her Complaint

because she has unduly delayed without good cause. Cross Opp'n at 8–10. He argues that

Walker "has not provided an explanation for having failed to move to amend the complaint or to

join a party before the [deadline] in the scheduling order has passed." Id. at 9. While Fitzpatrick

is correct that August 16, 2016 was the deadline to amend pleadings, Dkt. No. 53 ("Scheduling

Order") at 1, Walker has offered an adequate explanation for her delay. According to Walker, the

PAC adds additional factual allegations based on "evidence obtained through discovery." Cross

Mot. at 6. As Walker notes, id. at 5, "[i]t is not inappropriate to permit an amendment to

pleadings in order 'to conform the pleadings to the evidence unearthed by discovery,'" Mellon

Bank F.S.B. v. Alexander Wescott & Co., No. 98-CV-2650, 1999 WL 504914, at *5 (S.D.N.Y.

July 16, 1999) (quoting Secs. and Exchange Comm'n v. Nat'l Student Mkt. Corp., 73 F.R.D.

444, 446 (D.D.C. 1997)). The Court is satisfied with Walker's explanation, especially in light of

the fact that Fitzpatrick does not claim to have suffered any prejudice as a result of the delay.

      Fitzgerald also argues that Walker's Cross Motion should be denied on futility grounds

because the changes proposed in the PAC do not address the purported deficiencies identified in

his Motion. Cross Opp'n at 11–16. "An amendment is considered futile if the amended pleading

fails to state a claim or would be subject to a successful motion to dismiss on some other basis."
Cowles v. Yesford, No. 99-CV-2083, 2001 WL 179928, at *3 (N.D.N.Y. Feb. 22, 2001) (quoting
Chan v. Reno, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996)). Because the Court has determined that
the PAC adequately alleges facts to survive Fitzpatrick's Motion, the proposed amendments are
not futile. The Court therefore finds that justice requires allowing Walker to amend her
Complaint.

### C.  Sanctions Motion

Walker has moved for sanctions under 28 U.S.C. § 1927, Rule 11 of the Federal Rules of
Civil Procedure, and the Court's inherent authority. Sanctions Mem. at 11–17. Under § 1927,
"[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously
may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees
reasonably incurred because of such conduct." A court may only award § 1927 sanctions "when
the attorney's actions are so completely without merit as to require the conclusion that they must
have been undertaken for some improper purpose." Johnson v. Univ. of Rochester Med. Ctr.,
642 F.3d 121, 125–26 (2d Cir. 2011) (quoting Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir.
2009)).

Rule 11 requires an attorney submitting a pleading, motion, or other filing to the court to
certify that "to the best of [her] knowledge, information, and belief, . . . [the submission] is not
being presented for any improper purpose, such as to harass, cause unnecessary delay, or
needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). Counsel runs afoul of Rule 11
"only when it is 'patently clear that a claim has absolutely no chance of success.'" Oliveri v.
Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) (quoting Eastway Constr. Corp. v. City of New

York, 762 F.2d 243, 254 (2d Cir. 1985)). "If Rule 11 has been violated, sanctions are

mandatory." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of

Am., AFL-CIO, 948 F.2d 1338, 1344 (2d Cir. 1991).

"In order to impose sanctions pursuant to its inherent power, a district court must find

that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad

faith, i.e., motivated by improper purposes such as harassment or delay." Enmon v. Prospect

Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (quoting Schlaifer Nance & Co., Inc. v. Estate of

Warhol, 194 F.3d 323, 336 (2d Cir. 1999)). "In practice, 'the only meaningful difference

between an award made under § 1927 and one made pursuant to the court's inherent power is . . .

that awards under § 1927 are made only against attorneys or other persons authorized to practice

before the courts while an award made under the court's inherent power may be made against an

attorney, a party, or both." Id. at 144 (alteration in original) (quoting Oliveri v. Thompson, 803

F.2d 1265, 1273 (2d Cir. 1986)).

Walker's core argument in support of sanctions is that Fitzpatrick unreasonably delayed

making his motion for judgment on the pleadings. Sanctions Mem. at 2, 12, 14–17. Because

Fitzpatrick waited nearly a year after the Court's 2016 Order to move under Rule 12(c), Walker

contends, he has acted in bad faith and "forced" Walker to incur unnecessary costs conducting

discovery. Id. at 2, 12–17. Walker's request loses much of its force because she has survived

Fitzpatrick's Motion and thus incurred no unnecessary discovery costs. Awarding discovery

costs now would be nothing more than a windfall.

In any event, Walker has not established that Fitzpatrick filed his Motion in bad faith.

Although ultimately unsuccessful, Fitzpatrick's arguments in support of judgment on the

16

pleadings are not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Johnson, 642 F.3d at 125–26. Fitzpatrick submitted his Motion within the time limits imposed by Rule 12(c), Fed. R. Civ. P. 12(c) (permitting motions for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial"), and has explained that the delay was at least partially caused by an injury suffered by his attorney, Sanctions Opp'n at 2–3. Moreover, Fitzpatrick's one year delay is far shorter than the five year delay sanctioned in Steimel v. Inc. Village of Rockville Center, 965 F. Supp. 366, 374 (E.D.N.Y. 1997), aff'd, 141 F.3d 1152 (2d Cir. 1998), upon which Walker relies. The Court concludes that Fitzpatrick's one year delay was not "vexatious, dilatory and disruptive," and thus not sanctionable under § 1927, Rule 11, or the Court's inherent authority. Id. Walker's Sanctions Motion is therefore denied.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Fitzpatrick's Motion (Dkt. No. 66) is **DENIED**, and it is further

**ORDERED**, that Walker's Cross Motion (Dkt. No. 91) is **GRANTED**, and it is further

**ORDERED**, that Walker's Sanctions Motion (Dkt. No. 80) is **DENIED**, and it is further

**ORDERED**, that, pursuant to Local Rule 7.1(a)(4), Walker shall file his Amended Complaint **within fourteen days** of this Memorandum-Decision and Order, and it is further

**ORDERED**, that Defendants shall file a response to any amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        November 17, 2017
              Albany, New York

Lawrence E. Kahn
U.S. District Judge