UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NANCY RODRIGUEZ WALKER,

                                Plaintiff,

    -against-                                5:15-CV-47 (LEK/DJS)

WILLIAM J. FITZPATRICK, *et al.*,

                                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Nancy Rodriguez Walker asserts a stigma-plus due process claim against William J. Fitzpatrick, District Attorney of Onondaga County, and Melinda McGunnigle, Senior Assistant District Attorney of Onondaga County. Dkt. No. 107 ("Amended Complaint"). Plaintiff alleges that Defendants made stigmatizing comments about her that deprived her of work and status as a court interpreter. Id.

Defendants have now moved for summary judgment. Dkt. Nos. 129 ("Summary Judgment Motion"), 129-34 ("Defendants' SJ Memorandum"),[1] 129-33 ("Defendants' Statement of Material Facts" or "Defendants' SMF"), 129-1 through 129-32 ("Defendants' SJ Exhibits"), 147-1 ("SJ Reply"). Plaintiff has filed a response in opposition to the Summary Judgment Motion. Dkt. Nos. 143 ("SJ Response"),[2] 144 ("Plaintiff's Statement of Material Facts" or "Plaintiff's SMF"), 145-1 through 145-27 ("Plaintiff's SJ Exhibits").

---

[1] While this document has been filed under seal, a public version, with confidential information redacted, is available at Docket No. 152.

[2] While this document has been filed under seal, a public version, with confidential information redacted, is available at Docket No. 153.

Also before the Court is Plaintiff's motion for leave to amend her complaint, Dkt. Nos. 130 ("Motion to Amend"), 130-3 ("Proposed Second Amended Complaint" or "Proposed SAC"), which Defendants oppose, Dkt. No. 137-1 ("Defendants' Opposition to Motion to Amend"). Parties previously dismissed from this case, whom Plaintiff seeks to re-add, also oppose the Motion to Amend and move to intervene. Dkt No. 136-1 ("Klein Opposition to Motion to Amend"); 138-1 ("Tormey Opposition to Motion to Amend")

For the reasons that follow, the Summary Judgment Motion is granted, the Motion to Amend is denied, and Plaintiff's claims are dismissed in their entirety.

## II. BACKGROUND

### A. Factual Background

Plaintiff is a Spanish-language interpreter. Pl.'s SMF ¶ 1; Defs.' SMF ¶ 1. For over twenty years, she has translated for the State of New York's Unified Court System (the "Court System")—including the state's Fifth Judicial District—as well as the Onondaga County District Attorney's Office and various state and federal agencies. Pl.'s SMF ¶¶ 1, 10, 27, 29; Defs.' SMF ¶¶ 1, 10, 27, 29. She has interpreted at trials, arraignments, hearings, jail visits, and various civil and criminal proceedings, and has translated wire recordings, documents and audio recordings. Pl.'s SMF ¶ 28; Defs.' SMF ¶ 28.

#### 1. The Registry

In order to interpret for the Court System, individuals are required to be listed on the Per Diem Court Interpreter Registry (the "Registry"). Pl.'s SMF ¶¶ 11, 15; Defs.' SMF ¶¶ 11, 15. The Office of Court Administration ("OCA"), the administrative arm of the Court System, maintains the Registry. Pl.'s SMF ¶¶ 11–12, 15; Defs.' SMF ¶¶ 11, 15. In order to be placed on the Registry as eligible to receive court interpreting assignments, a translator must pass a criminal background check, as well as written and oral language proficiency exams. Pl.'s SMF ¶

12; Defs.' SMF ¶ 12. Plaintiff completed the requirements necessary to be placed on the Registry in 1992. Pl.'s SMF ¶ 14; Defs.' SMF ¶ 14.

The OCA's Office of Court Interpreting Services ("OCIS") is responsible for overseeing the interpreters and interpreting services provided to New York's state courts. Pl.'s SMF ¶ 17; Defs.' SMF ¶ 17. Interpreters listed in the Registry must adhere to the Court System's Canons of Professional Responsibility for Court Interpreters. Pl.'s SMF ¶ 18; Defs.' SMF ¶ 18. When interpreting services are required in state court, the presiding judge selects the court interpreter from the Registry. Pl.'s SMF ¶ 32; Defs.' SMF ¶ 32. OCIS monitors the performance of interpreters and maintains a database to keep track of complaints registered against interpreters, and has a process for handling such complaints. Pl.'s SMF ¶¶ 18, 22; Defs.' SMF ¶¶ 18, 22. Removal from the Registry is a potential disciplinary action that may be taken in response to complaints. Pl.'s SMF ¶ 23; Defs.' SMF ¶ 23. In addition, when notified of a Per Diem Interpreter's arrest, OCIS automatically removes that interpreter's name from the Registry and refers the matter to OCA's Inspector General ("IG"). Pl.'s SMF ¶¶ 26; Defs.' SMF ¶¶ 26. In the event that a Per Diem Interpreter is removed from the Registry, she can no longer receive assignments from New York state courts. Pl.'s SMF ¶ 24; Defs.' SMF ¶ 24. However, a translator need not be on the Registry to serve as an interpreter for the District Attorney's Office outside of state court proceedings. Pl.'s SMF ¶¶ 31; Defs.' SMF ¶¶ 31.

## 2. *The Arrest*

In 2012, Assistant District Attorney McGunnigle was working on a homicide case. Pl.'s SMF ¶ 34; Defs.' SMF ¶ 34. As the investigation progressed, it morphed into an ancillary investigation of Plaintiff after investigators discovered that someone was leaking confidential grand jury information. Pl.'s SMF ¶¶ 37, 50; Defs.' SMF ¶¶ 37, 50. A local Spanish-speaking

3

attorney, indicted for bribing a witness, Pl.'s SMF ¶¶ 39, 44–45; Defs.' SMF ¶¶ 39, 44–45, named Plaintiff as the source of grand jury leaks, Pl.'s SMF ¶ 51; Defs.' SMF ¶ 51.

On October 25, 2012, Plaintiff was summoned to the District Attorney's office, where she translated a letter containing claims that the Spanish-speaking attorney had engaged in illegal activity. Pl.'s SMF ¶¶ 60–61; Defs.' SMF ¶¶ 60–61. On November 2, 2012, Plaintiff returned to the District Attorney's office to ostensibly to interpret for the individual who had allegedly authored the letter. Pl.'s SMF ¶¶ 61–63; Defs.' SMF ¶¶ 61–63. Plaintiff was then interrogated, arrested, and charged with two felony counts of Unlawful Grand Jury Disclosure. Pl.'s SMF ¶¶ 63–70; Defs.' SMF ¶¶ 63–70. As part of the interrogation, Fitzpatrick tried to convince Plaintiff to cooperate, but she refused. Pl.'s SMF ¶ 68; Defs.' SMF ¶ 68. According to Plaintiff, Fitzpatrick told Plaintiff that "everything you've done in your life is done," and that she would "never work again." Pl.'s SMF ¶ 67. He also stated, according to Plaintiff, that "if I walk out of this room everything in your life is done. You're going to be a felon and I'm going to do the very best I can to see that you go to prison." Id.

On February 2, 2013, Plaintiff was indicted by a grand jury on four counts of perjury and two counts of unlawful grand jury disclosure. Pl.'s SMF ¶ 76; Defs.' SMF ¶ 76. Plaintiff proceeded to a bench trial on the charges of unlawful grand jury disclosure, and on August 29, 2013, she was acquitted. Pl.'s SMF ¶ 77; Defs.' SMF ¶ 77.

### 3. *Plaintiff's Status as an Interpreter*

Following the charges, District Attorney Fitzpatrick decided to stop using Plaintiff as an interpreter for matters in the District Attorney's Office. Pl.'s SMF ¶ 71; Defs.' SMF ¶ 71.

On November 5, 2012, McGunnigle, at the direction of Fitzpatrick, wrote a letter to the Honorable James C. Tormey, District Administrative Judge of the Fifth Judicial District,

regarding Plaintiff. Pl.'s SMF ¶¶ 73–74; Defs.' SMF ¶¶ 73–74. McGunnigle's letter included the following statements: "[Plaintiff]'s conduct not only divulged confidential information, but may have put the lives of these witnesses in jeopardy," "[o]ur office can no longer trust that Ms. Walker will keep . . . information confidential," and "we do not believe that it is appropriate for [Plaintiff] to continue providing translation services to any court at this time." Dkt. No. 145-12 ("Letter to Tormey"). The parties dispute whether there was additional communication between Tormey/court administrators and the District Attorney's Office about Plaintiff's status as an interpreter. Pl.'s SMF ¶ 75; Defs.' SMF ¶ 75.

In addition, due to Plaintiff's association with OCA as a court interpreter, a notification of her arrest was provided to OCIS. Pl.'s SMF ¶ 78; Defs.' SMF ¶ 78. OCIS removed Plaintiff from the Registry. Pl.'s SMF ¶ 79; Defs.' SMF ¶ 79. Sandra Bryan, OCIS coordinator, referred Plaintiff's matter to the IG for an investigation and recommendation regarding Plaintiff's status as a Per Diem Court Interpreter. Pl.'s SMF ¶ 80; Defs.' SMF ¶ 80. Because Plaintiff elected to proceed to trial on the criminal charges, the IG delayed completing its investigation until Plaintiff's trial concluded. Pl.'s SMF ¶ 82; Defs.' SMF ¶ 82.

Following Plaintiff's acquittal, the IG investigator, as part of his investigation into Plaintiff, had conversations with McGunnigle. Pl.'s SMF ¶ 83; Defs.' SMF ¶ 83. The first IG report characterized the contact with McGunnigle: "On August 30, 2013, [McGunnigle] advised that her office was requesting [that Plaintiff] not be assigned to interpret any matters involving the District Attorney's Office. Fifth Judicial District Executive Michael Klein and Sandra Bryan, Coordinator [of OCIS], were advised of the District Attorney's Request." Dkt. No. 145-18 ("First IG Report").

On September 18, 2013, Plaintiff emailed Fifth Judicial District court personnel that she was available to provide court interpreting services. Pl.'s SMF ¶ 85; Defs.' SMF ¶ 85. The next day, Bryan sent an email to court employees that Plaintiff was not eligible for court interpreter assignments because the IG investigation was still open. Pl.'s SMF ¶ 86; Defs.' SMF ¶ 86. The same day, the IG's office contacted Plaintiff to schedule an interview concerning her 2012 arrest. Pl.'s SMF ¶ 87; Defs.' SMF ¶ 87. Plaintiff declined the interview request. Pl.'s SMF ¶¶ 88–90; Defs.' SMF ¶¶ 88–90.

On October 17, 2013, the IG submitted the First IG Report to Eugene Myers, the Chief of Staff to the OCA's Chief Administrative Judge. Dkt No. 129-22 ("Memorandum re First IG Report") at 1. The First IG Report noted McGunnigle's request that Plaintiff not be assigned to any cases involving the District Attorney's Office. First IG Rep. at 2. In addition, the First IG Report noted that Plaintiff "failed to cooperate" with the investigation and recommended that Plaintiff "be permanently removed from the eligibility list of Court Interpreters." First IG Rep. at 3. The parties dispute the weight that the IG gave to the District Attorney's opinion in the First IG Report. Pl.'s SMF ¶ 92; Defs.' SMF ¶ 92.

On October 25, 2013, Myers emailed the IG that, consistent with its recommendation, she and Rena Micklewright (an OCIS official) "will arrange to have [Plaintiff] permanently removed from the list." Dkt. No. 129-23 ("Myers email"); Pl.'s SMF ¶ 92; Defs.' SMF ¶ 92. On October 25, 2013, Plaintiff was permanently removed from the Registry. Pl.'s SMF ¶ 92; Defs.' SMF ¶ 92.

Plaintiff then sought reinstatement to the Registry. Pl.'s SMF ¶ 93; Defs.' SMF ¶ 93. The IG re-opened its investigation into Plaintiff, and again spoke to McGunnigle. Pl.'s SMF ¶ 95; Defs.' SMF ¶ 95. A copy of Plaintiff's indictment was faxed to the IG. Pl.'s SMF ¶ 97; Defs.'

SMF ¶ 97. On April 3, 2014, the IG conducted an interview with Plaintiff regarding her relationship with the Spanish-speaking attorney. Pl.'s SMF ¶ 98; Defs.' SMF ¶ 98.

On April 28, 2014 the IG provided Myers with a second IG report. Pl.'s SMF ¶ 102; Defs.' SMF ¶ 102; Dkt Nos. 129-26 ("Memorandum re Second IG Report"), 145-21 ("Second IG Report"). The Second IG Report detailed the interview with Plaintiff, and also noted that McGunnigle "stated that her office strongly objects to [Plaintiff] being present in the courtroom or during grand jury proceedings during any criminal matters. According to [McGunnigle], the District Attorney had discussed the matter with the Fifth Judicial District Administrators." Second IG Rep. at 4. Again, the parties dispute the weight the IG gave to the District Attorney's opinion in the Second IG Report. Pl.'s SMF ¶¶ 105–06; Defs.' SMF ¶¶ 105–06.

On June 24, 2014, ten months after Plaintiff's acquittal, OCIS sent a letter to Plaintiff informing her that she had been restored to the Registry. Dkt No. 129-28 ("Reinstatement Letter"). The Reinstatement Letter explained that "[a]fter a review of the findings made by the Office of the Inspector General, and in collaboration with the Fifth Judicial District Office, your name and contact information will again be listed in the Registry . . . effective immediately." Id. at 2. Plaintiff contends that the delay in her reinstatement to the Registry was caused by Defendants' stigmatizing statements. Pl.'s SMF ¶¶ 119–23, 126–27.

Despite Plaintiff's reinstatement to the Registry, Judge Tormey determined that Plaintiff could not translate in any criminal matters in Onondaga County. Pl.'s SMF ¶¶ 107–08; Defs.' SMF ¶¶ 107–08. The parties dispute whether Tormey consulted Defendants about this decision, whether he made his decision to accommodate the District Attorney's lack of confidence in Plaintiff, and whether he based his decision on the IG Report. Id. Defendants claim that Tormey excluded Plaintiff from criminal matters in Onondaga County because of a clear conflict of

interest between Plaintiff and the District Attorney, given her prosecution. Id. The parties also dispute whether Tormey in fact had the authority to forbid courts from using Plaintiff as a translator. Pl.'s SMF ¶¶ 107–08, 111–12; Defs.' SMF ¶¶ 107–08, 111–12.

After Tormey's decision, Plaintiff remained fully eligible for assignments in all courts in the Fifth Judicial District except for Onondaga County, where she could only translate in civil matters. Pl.'s SMF ¶ 109; Defs.' SMF ¶ 109. Michael Klein, District Executive of the Fifth Judicial District, advised Plaintiff of this via a letter to Plaintiff's counsel on August 8, 2014. Dkt No. 145-28 ("Klein Letter"). The letter further advised Plaintiff that she could seek review of this restriction of her translation services through written submission to OCA's Deputy Chief Administrative Judge Michael Coccomma. Id. at 3. Plaintiff did not seek such administrative review. Pl.'s SMF ¶ 113; Defs.' SMF ¶ 113.

### B. Procedural Background

Plaintiff started this action on January 15, 2015 against Fitzpatrick, Judge Tormey, and Klein, individually and in their official capacities. Dkt No. 1 ("Complaint"). The Complaint asserted claims for violations of procedural due process, "stigma-plus" due process violations, and conspiracy to violate her Fifth and Fourteenth Amendment rights. Id. ¶¶ 116–213. In May and June 2015, Fitpatrick, Tormey, and Klein individually moved to dismiss the Complaint for failure to state a claim. Dkt. Nos. 29–30, 33. The Court dismissed all claims against Judge Tormey and Klein, as well as the procedural due process claim against Fitzpatrick. Dkt. No. 46 ("2016 Order") at 7–18. The Court also dismissed Plaintiff's conspiracy claim to the extent it was based on the restrictions placed on her assignments, her prosecution, the delay in reinstating her to the Registry, and recommendation that the IG investigate her. Id. at 17. Only the stigma-plus claim against Fitzpatrick survived. Id. at 15–16.

The parties subsequently engaged in discovery, and, on March 28, 2017, Fitzpatrick again moved to dismiss the Complaint, this time under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 66 ("12(c) Motion"). Plaintiff opposed the 12(c) Motion and moved for sanctions in response to Fitzpatrick's "delayed filing" of the 12(c) Motion. Dkt. No. 80 ("Sanctions Motion"). She also cross-moved to amend the Complaint. Dkt. No. 91. On November 17, 2017, the Court denied the 12(c) Motion and the Sanctions Motion. Dkt. No. 102 ("November 2017 Order") at 17–18. The Court permitted Plaintiff to amend her Complaint, since additional Plaintiff's factual allegations were based on evidence recently obtained through discovery, and Fitpatrick did not claim to have suffered any prejudice as a result of the delay. Id. at 14–15.

On December 8, 2017, Plaintiff filed her Amended Complaint, asserting a stigma-plus due process claim against Defendants. Am. Compl.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational juror could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

In assessing a motion for summary judgment, a court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). "It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing

of evidence are matters for the jury, not for the court on a motion for summary judgment.'" Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) (citation omitted).

**B. Motion to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of amendment—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). Therefore, a "proposed amendment is not futile if it states a claim upon which relief can be granted." Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist., No. 12-CV-507, 2013 WL 4811958, at *4 (N.D.N.Y. Sept. 10, 2013).

**IV. DISCUSSION**

**A. Stigma-Plus Claim**

It is well-settled that "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or to create a cause of action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004) (citing Paul v. Davis, 424 U.S. 693, (1976)). However, "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. "Such an action is referred to as a stigma-plus claim; it involves 'an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property

10

right (the plus), without adequate process.'" Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (quoting DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003)).

A plaintiff "must satisfy three elements in order to demonstrate a deprivation of the stigma component of a stigma-plus claim." Segal, 459 F.3d at 212 (citing Patterson, 370 F.3d at 330). First, the plaintiff "must . . . show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity." Patterson, 370 F.3d at 330 (internal citation and quotation marks omitted). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" will satisfy the stigma requirement. Donato v. Plainview–Old Bethpage Cent. Sch. Dist., 96 F.3d 623 at 630–31 (2d Cir. 1996). Second, "a plaintiff must prove these stigmatizing statements were made public." Patterson, 370 F.3d at 330 (internal citation omitted). Third, a plaintiff must show that "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Segal v. City of New York, 459 F.3d 207, 212–13 (2d Cir. 2006) Because stigma-plus is a subclass of procedural due process, a plaintiff must also demonstrate that she was not afforded adequate process in connection with the deprivation of her liberty interest. Id.

Defendants argue that, because they lacked "any control over the removal of Plaintiff from the Registry or over the process provided in connection with that removal," they cannot be liable for Plaintiff's removal from, or delayed reinstatement to, the Registry. Defs.' SJ Mem. at 14. Plaintiffs, meanwhile, contend that Defendants "need not have control over Plaintiff's removal; it is sufficient that Defendants' statements appear connected to Plaintiff's removal from

11

and delayed reinstatement to the Registry, and were adopted by those who officially controlled Plaintiff's status on the Registry." SJ Resp. at 21. Plaintiff also maintains that there are genuine and material issues of fact regarding whether Defendants' stigmatizing statements caused Plaintiff's removal from the Registry. SJ Resp. at 14.

Both sides rely extensively on Velez v. Levy, 401 F.3d 75 (2d Cir. 2005), in support of their positions. In Velez, a "community school board member" alleged that the defendants—the Chancellor, various school board members, and investigators—"forced her removal from office" after "conspir[ing] to fabricate, and to disseminate publicly, accusations that she had sprinkled a powdery substance in front of the office door of another school official." Id. at 79. She brought a stigma-plus claim, which was dismissed by the district court pursuant to Federal Rule of Civil Procedure. 12(b)(6). The Second Circuit affirmed the district court's dismissal of the stigma-plus claim as to all of the defendants except the Chancellor.

As Plaintiff emphasizes, the Second Circuit held in Velez that "perfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest." 401 F.3d at 89. "There is no rigid requirement that the 'stigma' and the 'plus' must issue from the same government actor or at the same time." Id. Velez also cautions, however, that a stigma-plus claim cannot lie against an individual who lacks the authority to provide process to the plaintiff. As the court stated,

> The existence of a liberty interest . . . is a very different question from that of whether both the originator of the stigma and the imposer of the plus are liable to the plaintiff. And it is the case that, for any number of reasons . . . , one or more defendants whose actions collectively implicate a liberty interest may not be liable for the deprivation of that liberty interest.

Id. at 89 n. 12. The Velez court held that only the Chancellor could be liable to the plaintiff on her stigma-plus claim, even though some of the other defendants were responsible for

12

stigmatizing statements, because only the Chancellor possessed the power to impose a "plus" on the plaintiff, or to provide her with due process. Id. at 93. The other school board member defendants could not be liable because they lacked "the power to provide process to the plaintiff. They did not undertake or oversee the investigation, and they could order neither pre-removal review nor post-removal remedies." Id. at 93. Similarly, the investigator defendants could not be liable because they "had no legal authority to bring about her ouster, for only [the Chancellor] was empowered to impose that 'plus.'" Id.; see also Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 269–70 (S.D.N.Y. 2006) (relying on Velez to dismiss claim against defendant who issued "stigma" but had no control over process related to the "plus").

Like the school board members in Velez, Defendants here "did not undertake or oversee the investigation" into whether Plaintiff should be kept off the Registry "and they could order neither pre-removal review nor post-removal remedies." Velez, 401 F.3d at 93. There is no reasonable dispute in this case that OCA/OCIS—not Defendants—had the ultimate authority as to Plaintiff's status on the Registry and any related processes. See Pl.'s SMF ¶¶ 11 (not disputing that OCA "maintains" the Registry), 17 (not disputing that OCIS is "responsible for overseeing the interpreters and interpreting services"), 21 ("OCIS monitors the performance of Per Diem Interpreters and maintains a database to keep track of complaints registered against interpreters."), 22 ("OCIS has a process for handling complaints registered against an interpreter."). Indeed, in the Plaintiff's Summary Judgment Response, she characterizes OCA/OCIS as the "Decision Makers" in the decision to remove Plaintiff and delay her reinstatement. Pl.'s Resp. at 20. And the letter reinstating Plaintiff to the Registry came from OCIS. Reinstatement Ltr. Further, the IG Reports were submitted to OCA administrators, not Defendants. Mem. re First IG Rep.; Mem. re Second IG Rep. Even as to the decision to prohibit

13

Plaintiff from translating criminal court matters in Onondaga County (an injury insufficient to satisfy the "plus" factor of a stigma-plus claim, October 2016 Order at 13), the appeal process available to Plaintiff was not through Defendants, but through an OCA administrator, Klein Letter at 3.

Plaintiff stresses that the decisions made by OCA/OCIS to keep Plaintiff off the Registry were based on information provided by Defendants. While there is evidence in the record to support that factual assertion, such as the IG Reports referencing Defendants' statements objecting to Plaintiff serving as a translator, such assertions do not serve to distinguish Velez from the instant case. Like the school board defendants in Velez, neither defendant in this case "had the power to provide process to the plaintiff. They did not undertake or oversee the investigation, and they could order neither pre-removal review nor post-removal remedies." Velez, 401 F.3d at 93. And like the investigator defendants in Velez, even if Defendants acted "in concert" with OCA/OCIS "in effecting [Plaintiff's] removal," they "had no legal authority to bring about her ouster, for only [OCA/OCIS] was empowered to impose that 'plus.'" Id. While the record supports Plaintiff's contention that Defendants worked closely with the OCA/OCIS, there is no reasonable dispute that Defendants lacked the authority to impose a "plus."

In sum, Defendants' actions that provide the basis for Plaintiff's stigma-plus claim—(1) writing a letter to Judge Tormey stating that (a) they "no longer trust[ed]" Plaintiff with confidential information; (b) they believed it "inappropriate" for Plaintiff to continue providing translation services "to any court at this time;" and (c) Plaintiff "may have put the lives of [] witnesses in jeopardy," Tormey Ltr. at 2; (2) advising the IG that the District Attorney was requesting that Plaintiff not translate for any of their office's cases, First IG Rep. at 3; and (3) advising the IG that they "strongly object" to Plaintiff's involvement in any criminal court

14

proceedings, Second IG Rep. at 4, Pl.'s SJ Resp. at 8–9—go to the "stigma" element, rather than the "plus" element. However, as Velez makes clear, a stigma-plus action cannot lie against a defendant who has no ability to impose a plus, or to provide process to the plaintiff. Summary judgment is therefore granted to Defendants.

**B. Motion for Leave to Amend**

Plaintiff moves to file a second amended complaint, which would re-add Tormey and Klein as defendants, and re-add a conspiracy claim against Tormey, Klein, Fitzpatrick, and McGunnigle for engaging in a conspiracy to block or delay Plaintiff's reinstatement to the Registry. Mot. to Amend; Proposed SAC 145–54. Plaintiff's Motion to Amend is denied.

In order to establish a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002).

However, "[w]here . . . all substantive Section 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed." Caporicci v. Nassau Cty. Police Dep't, No. 05-CV-5764, 2007 WL 764535, at *8 (E.D.N.Y. Mar. 6, 2007); see also Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (dismissing conspiracy claim where underlying § 1983 causes of action had been dismissed). A § 1983 "lawsuit will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." Singer v. Fulton Cty Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).

The Court has dismissed Plaintiff's one remaining claim (stigma-plus), and the stigma-plus allegations contained in the Proposed SAC stigma-plus claim would fail for the same

15

reasons detailed above. Plaintiff's Proposed SAC does not attempt to raise any additional underlying § 1983 causes of action; she seeks only to add the conspiracy claim premised on Defendants' alleged stigma-plus violation. Proposed SAC. As Plaintiff's underlying constitutional claims have been dismissed, Plaintiff cannot maintain a conspiracy claim. Droz, 580 F.3d at 109. Accordingly, Plaintiff's amendment to her pleading is futile, and her Motion to Amend is denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Summary Judgment Motion (Dkt. No. 129) is **GRANTED**, and Plaintiff's claims are **DISMISSED** in their entirety; and it is further

**ORDERED**, that Plaintiff's Motion to Amend (Dkt No. 131) is **DENIED**; and it is further

**ORDERED**, that the Clerk is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 14, 2019
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge